(Decided 11th March, 1869.)

---

ALEXANDER T. STEWART, and others, *vs.* KAUFF-
MAN KATZ, Claimant of Property attached of
DAVID LONG.

*Attachment under the Act of 1864, ch. 306—Form of Affidavit, Bond and Account—Power of the Court in such action to try the Validity of the deed impeached, on Motion to quash.*

The affidavit for an attachment under the Act of 1864, ch. 306, stated that the affiant appeared "on behalf of A. T. S., F. W. and G. F., partners

Stewart, *et al.*, *vs.* Katz, Claimant.

trading under the name of A. T. S. & Co., and made affidavit that D. L. is *bona fide* indebted to the said A. T. S. & Co., in the sum of $4,051.09 over and above all discounts, and that *the said A. T. S. & Co.* have good reason to believe," &c. HELD:

That the statement in said affidavit, that "said A. T. S. & Co. have good reason to believe," showed a sufficient compliance with that part of said Act, which requires the plaintiff, or some person in his behalf, to make affidavit that "the *plaintiff* knows or has good reason to believe," &c.

The sufficiency of the sureties in the bond required by said Act, is a matter left entirely to the judgment of the clerk, but the legal validity of the bond itself is a subject for review on appeal.

In a bond given in attachment, brought by non-resident plaintiffs, under the Act of 1864, ch. 306, it was stated in the obligatory part, "that we, H. H. R., agent of A. T. S., F. W. and G. F., trading as A. T. S. & Co., A. M. and C. W. C. McC., *all of Baltimore city*, are held," &c.; "to which payment *we* bind ourselves, our heirs, executors and administrators, firmly by these presents;" then followed a recital of the intent to issue the writ, and the condition; and the attesting clause was: "In witness whereof we have hereunto set our hands and seals, this 30th day of October, 1866," and it was signed "H. H. R., Agent, (Seal,)" and was also signed and sealed by the sureties. HELD:

That the legal import of this language was to bind the agent personally; and that the bond was sufficient to gratify the requirements of the Act.

Where the account, produced in attachment to show the indebtedness of the defendant, is made out in the mode usually adopted by merchants engaged in extensive business and is perfectly intelligible, it is sufficient.

Where the property attached has been conveyed by deed, a question of fact involving its validity may be raised on motion to quash, and heard before the Court in this summary mode, on evidence produced by the parties, if they elect so to try it. But the better practice is to have it submitted to a jury.

APPEAL from the Superior Court of Baltimore City.

On the 30th of October, 1865, Alexander T. Stewart, Francis Warden and George Fox, the appellants, plaintiffs below, sued out of the Superior Court of Baltimore city, against the property of David Long, an attachment on original process under the Act of 1864, ch. 306.

The plaintiffs were non-residents. The certificate of the clerk of said Court stated that Henry H. Rice, on the day above named, personally appeared before said clerk, " on behalf of·Alexander T. Stewart, Francis Warden and George Fox, partners, trading under the name of A. T. Stewart & Co., and made affidavit that David Long is *bona fide* indebted to the said A. T. Stewart & Co., in the sum of $4,051.09, over and above all discounts, and that the said A. T. Stewart & Co. have good reason to believe that the said David Long has assigned and disposed of a portion of his property, with intent to defraud his creditors, and that the said David Long fraudulently contracted the debt aforesaid; and at the same time the said plaintiffs produced to me the accounts by which the said David Long is to them so indebted, which are hereto annexed."

The accounts so produced were as follows:

NEW YORK, *September 29th*, 1866.

DAVID LONG,

*Bought of* A. T. STEWART & Co.

| | | | |
|---|---|---|---|
| 4,067, 5 ps. black cloth | .................. | 27⅜ | |
| 4,541, " " | .................. | 25¼ | |
| 3,394, " " | .................. | 27⅛ | |
| 4,543, " " | .................. | 28⅝ | |
| 4,776, " " | .................. | 27⅜ | |

135⅞ *a* $6.50, $883 18

| | | | |
|---|---|---|---|
| 46,755, 5 ps. ¾ black cloth | .............. | 34⅝ | |
| 46,861, " " | .............. | 35⅛ | |
| 46,613, " " | .............. | 35⅝ | |
| 47,026, " " | .............. | 34⅞ | |
| 46,938, " " | .............. | 34¼ | |

175  *a*  2.75,   481 25

---

Stewart, *et al.*, *vs.* Katz, Claimant.

---

| | | |
|---|---|---|
| 14,632, 4 ps. ¾ doe skins................ | 29½ | |
| 14,617, "        " ................ | 20¾ | |
| 14,641, "        " ................ | 30¾ | |
| 14,625, "        " ................ | 29¼ | |

| | | | |
|---|---|---|---|
| | 110¼ *a* 1.50, | 165 | 38 |
| 1 ps. black silk vesting......... 15 *a* 4.50, | | 67 | 50 |
| 1  "        "        "  ......... 15 *a* 4.75, | | 71 | 25 |
| 1  " satin        "  ......... 62½ *a* 2.25, | | 140 | 63 |
| 197, 1 p. 13 ps. fancy Union cross, 400² | | | |
| 219, 1 p. 14 "        "        "        " 350 | | | |

| | | | |
|---|---|---|---|
| Carried forward.................750² *a* 1.00, | | 750 | 50 |
| Am't brought forward, | | | |
| 1,470, 1 p. 16 silk mixed Union cross, 355¾ *a* 1.30, | | 462 | 47 |
| 1,448, 1 p. 17 "        "        " 374³ *a* 1.25, | | 468 | 43 |
| 1,777, 1 p. 12 "        "        " 298 *a* 1.87², | | 558 | 75 |
| Hoops........................................ | | 1 | 75 |

$4,051 09

And the said Rice, at the same time filed the following bond:

"Know all men by these presents, that we, Henry H. Rice, Agent of Alex'r T. Stewart, Francis Warden and George Fox, trading as A. T. Stewart & Co., Alexander Murdock and Charles W. C. McCoy, all of Baltimore city, in the State of Maryland, are held and firmly bound unto the State of Maryland, in the full and just sum of nine thousand dollars, current money, to be paid to the said State, its certain attorney or assigns, to the payment whereof well and truly to be made and done, we bind ourselves, our heirs, executors and administrators firmly by these presents.

"Whereas, the above bounden Alex'r T. Stewart, Francis Warden and George Fox, trading as aforesaid, has, on the day of the date hereof, ordered an attachment out of the Superior Court of Baltimore city, at the suit of Alex'r T. Stewart, Francis Warden and George Fox, against David

Long, for the sum of $4,051.09, and the same being about to be sued out of said Court, returnable on the second Monday of January next.

" Now the condition of the above obligation is such, that if the said Alex'r T. Stewart, Francis Warden and George Fox, shall prosecute their suit with effect, or in case of failure thereof, shall well and truly pay and satisfy to the said David Long, or any other persons interested in these proceedings, all such costs in said suit, and such damages as shall be awarded against the said Alex'r T. Stewart, Francis Warden and George Fox, their heirs, executors or administrators, in any suit or suits which may hereafter be brought for wrongfully suing out said attachment, then the above obligation to be void, otherwise to remain in full force and effect.

" In witness whereof, we have hereunto set our hands and seals, this 30th day of October, 1866.

" HENRY H. RICE, Agt., [Seal.]
ALEX'R MURDOCK,     [Seal.]
C. W. C. McCOY,     [Seal.]

" Signed, sealed, and delivered in presence of—

JOHN W. PEALE."

On the back of the aforegoing bond was the following endorsement, to wit:

" Bond approved 30 Oct., 1866."      A. MACE, Clerk.

On the same day, the clerk issued a writ of attachment against the property of the said David Long. The sheriff seized and took by virtue of said attachment, certain lots of goods, and on the 21st of November, 1866, Kauffman Katz, the appellee, as owner of the property attached, filed a motion to quash the attachment.

The motion to quash was argued, and the Court, (MARTIN, J.,) on the 3d of May, 1867, quashed the attachment, for a defect apparent on the face of the affidavit. From this order the plaintiff appealed.

Stewart, *et al.*, *vs.* Katz, Claimant.

The cause was argued before BARTOL, C. J., NELSON, STEWART and MILLER, J.

*P. M'Laughlin*, for the appellants:

The affidavit tells us who compose the firm and the names of the firm, and yet, when we use the name of the firm, we are told that the defendant cannot tell of whom the witness speaks, or that a jury or a judge could not tell from the affidavit who the identical plaintiffs are. 1 *Chit. Pl.*, 232, 233.

To repeat the names of the individual members of the firm, whenever they are mentioned, would produce the necessity of adding on each occasion the further statement that in what they were doing they were acting as partners, and not as individuals. This would introduce into pleadings very great and unnecessary prolixity without any corresponding benefit. But the affidavit in this case is in the highest degree certain. It precludes all arguments. Who compose the firm of A. T. Stewart & Co? The affidavit answers the question clearly, decisively and entirely. 1 *Chit. Pl.*, 234; *Drake on Attachments*, sec. 107; *Read vs. McLeod*, 20 *Alabama*, 576; *Chambers vs. Sloan*, 19 *Georgia*, 84.

*Benjamin F. Horwitz*, for the appellee:

Under the attachment system of Maryland, the owner of property attached under a writ of attachment issued against a third party, not only has the *right*, but is *bound* to appear in Court and move to have the attachment quashed, "either for an apparent defect in the proceedings," or "by showing the property attached does not belong to the defendant." *Campbell vs. Morris*, 3 *H. & McH.*, 552, 553; *Ranahan vs. O'Neale*, 6 *G. & J.*, 298; *Lamden vs. Bowie*, 2 *Md.*, 334; *Grover vs. Barnes*, 15 *Md.*, 576; *Howard vs. Oppenheimer*, 25 *Md.*, 350.

"The process of attachment is a special, statutory remedy, and in resorting to it the terms of the law conferring it must

be strictly pursued." *McPherson, et al. vs. Snowden, et al.*, 19 *Md.*, 233.

A party seeking to avail himself of it must not only bring himself fully within its provisions, but must also be careful that all the proceedings come clearly up to its requirements. It is a summary proceeding, *ex parte* in its nature, and acts with great rapidity. If not strictly pursued and enforced it may be converted into an instrument of oppression and liable to great abuse. The proceedings must be complete in themselves, and "cannot be supported by inferences, intendments or presumptions." All the requisites of the law must appear affirmatively and with certainty on the face of the proceedings, otherwise the Court acquires no jurisdiction over the case. *Wever vs. Baltzell, &c.*, 6 *G. & J.*, 341, 342. *Shivers vs. Wilson*, 5 *H. & J.*, 130; *Cumberland C. and I. Co. vs. Hoffman Coal Co.*, 22 *Md.*, 495; *Powers vs. Hurst*, 3 *Blackford*, 230; *Barr vs. Perry*, 3 *Gill*, 319, 320.

The Act of 1864 is an enlargement of the Act of 1795, so as to operate on the rights of citizens and residents of our own State. While, however, its operation is designed to protect creditors, it also, by its terms, affords protection to the resident debtor from the abuse of this extraordinary power of *first executing* to enforce payment of an *alleged* indebtedness, and *afterwards* trying the *right* to execute. The bond and affidavit are the two guards by which the debtor is protected. The 41st section declares: "Every attachment issued without a *bond* and *affidavit* taken as aforesaid, is hereby declared illegal and void, and shall be dismissed." Both are defective in this case.

1st. The affidavit states that the trade or firm name of "A. T. Stewart & Co. have *good reason to believe* that the said David Long has assigned and disposed of a portion of his property, with *intent* to defraud his creditors," &c. That a trade name, which is often but a fiction, cannot have *belief*, which refers to the operation of the mind, would seem too plain for argument. *Who* has good reason to believe? No

indictment could be framed on such an affidavit. The Act says that the affidavit shall say the plaintiffs know or have good reason, &c. Who are the plaintiffs — Alexander T. Stewart, Francis Warden and George Fox — not the trade name of A. T. Stewart & Co. If a suit were instituted in the name of A. T. Stewart & Co., and a demurrer were filed to the declaration, the demurrer would be sustained. Such a declaration might be good after verdict, by intendment, but certainly not in an affidavit, which lies at the jurisdiction of the Court. Everything must appear — the doctrine of presumption cannot be invoked. *Dean vs. Oppenheimer*, 25 *Md.*, 368; *Didier vs. Kerr*, 12 *G. & J.*, 499.

2d. The paper filed as a *bond* binds no one, and is in fact a nugatory paper, for the following reasons:

1st. It is not the bond of Stewart, Warden and Fox, as there is no authority from them to Rice, under seal, as there should be, in order to enable him to bind *them under seal. Clarke's Lessee vs. Courtney*, 5 *Peters*, 350; 2 *Greenleaf on Evidence*, sec. 61, (*Ed.* 1868;) *Abbey vs. Chase*, 6 *Cush.*, 56; *Story on Agency*, secs. 48, 49, and cases referred to.

Even if Rice had the proper authority, then, to bind them, *their* names, and *not* his, should be signed, under seal, to the bond.

2d. If, therefore, the principals are not bound, of course the sureties are not. The liability of the surety is co-extensive with that of the principal. 2 *Story on Contracts*, sec. 866. What operates to discharge the one also operates to discharge the other. *Hurlstone on Bonds*, 98, (9 *Law Lib.*, 52.) For whom did Murdoch and McCoy undertake to become sureties? The recital of the bond itself answers the question: for "the above bounden Stewart, Warden and Fox." "Recitals frequently operate in restraint of conditions, *especially* in favor of sureties, for whom the condition is *always* beneficially construed." *Hurlstone on Bonds*, 33, (9 *Law Lib.*, 18.)

The plaintiffs also failed to comply with the provisions of the 39th section of the law. That section requires that the

Stewart, *et al.*, *vs.* Katz, Claimant.

plaintiff *shall*, at the time of making the affidavit, produce and file the " account or other evidence of debt by which said debtor is so indebted." The design of this provision would seem to be two-fold: 1st, to give notice of the nature and character of the claim to those interested in the property seized; and, 2d, to prevent the creditor from altering his demand after the issue of the process. The account filed in this case is of such a character as to do nothing more than show the amount claimed, which is already done by the affidavit, and, therefore, this account cannot be a compliance with the requirements of the statute. It certainly must have been designed that something more should be shown by the account required to be filed, than the mere amount, which the affidavit not only contains, but verifies, (when properly drawn,) by the oath of the affiant. *De Sobry vs. De Laistre*, 2 *H. & J.*, 223.

MILLER, J., delivered the opinion of the Court.

On the 30th of October, 1866, the appellants sued out of the Superior Court of Baltimore city, an attachment under the Act of 1864, ch. 306, against the property and credits of David Long. The sheriff seized and took under the writ certain goods as the property of Long, and the appellee appeared and moved to quash the attachment—1st, for defects apparent on the face of the proceedings, and 2d, because he was the owner of the property, and Long then had and now has no interest therein, or right or title thereto. The motion to quash was set down for hearing with leave to all parties to take testimony upon the usual notice. Proof was taken relating exclusively to the validity of the bill of sale of the 23d of October, 1866, under which the appellee claimed title to the property. Upon the hearing of the motion the Court quashed the writ upon the sole ground of the insufficiency of the affidavit required by the law to be made before the attachment shall be issued. From the order thus quashing the attachment, the present appeal was taken. The

alleged defects upon the face of the proceedings relate mainly to the sufficiency of the affidavit and the validity of the bond. These we shall consider in their order:

1st. The law requires that the plaintiff or some person in his behalf, shall make an affidavit stating the indebtedness of the defendant to the plaintiff, and that the plaintiff knows or has good reason to believe the defendant is about to abscond, or has done certain specified acts or some one of them. The present affidavit states that the affiant, Rice, appeared "on behalf of Alexander T. Stewart, Francis Warden and George Fox, partners, trading under the name of A. T. Stewart & Co., and made affidavit that David Long is *bona fide* indebted to the *said* A. T. Stewart & Co., in the sum of $4,051.09, over and above all discounts, and that the *said* A. T. Stewart & Co. have good reason to believe," &c. The alleged defect is said to consist in this, that the witness has not sworn that the *individuals* constituting the firm of "A. T. Stewart & Co." or the *plaintiffs*, but "A. T. Stewart & Co." in their aggregate capacity and under their trade or partnership name, have good reason to believe, &c. And it is argued in support of the objection, that a *trade name* cannot have *belief* which refers to an operation of the mind, and that no indictment for perjury could be framed on such an affidavit. This objection reaches the extreme point of attenuation, and is, in our judgment, not warranted by any of the decisions which have enforced the strictest conformity of attachment proceedings with the requirements of the law. The names of the individuals on whose behalf the affiant appears are stated, and it is then stated that these individuals compose a certain *firm*, known by a certain name, and the witness then swears to the indebtedness of the defendant to the *said firm*, and that *said firm* has good reason to believe, &c. From this it is impossible to doubt who were meant by the terms "the said A. T. Stewart & Co.," or that the conscience of the affiant was pledged to the averment that the individuals previously named as constituting the firm, have good reason to believe the facts sub-

sequently stated. It was not necessary that these names should be repeated each time there was occasion to refer to them, but reference to them by the other and briefer name or *alias*, by which they were known, was sufficient. A partnership is not a being distinct from the individuals who compose it, and when it is spoken of by its firm name, and as the *said* partnership and the members which constitute it have been previously in the same instrument specially mentioned, no other meaning can be given to the reference than to the individuals thus named. We cannot sustain such an objection. The law may be a harsh one, and capable of being converted into an instrument of oppression and liable to great abuse; but the Courts must give it effect so long as it remains the law of the State. No other objections to the affidavit have been made or suggested, which require notice by this Court.

2d. The law also says that before the attachment shall issue, a bond shall be taken from the plaintiff, or some person on his behalf with security, to be approved by the clerk, with the prescribed condition, and if any attachment shall be issued without a bond taken as aforesaid, it shall be illegal and void. Under this, the sufficiency of the sureties is a matter left entirely to the judgment of the clerk, but the legal validity of the bond itself, is a subject for review on this appeal. The objection is, that it is not the bond of Stewart, Warden and Fox, because their names are not signed to it by Rice, by authority under seal to that effect or otherwise, and that it is not the bond of Rice, because he signs it as agent, and did not intend thereby to bind himself. If both views are sound, the objection is certainly well taken, for the securities could not be held responsible on such an instrument. We agree for the reason stated, that Stewart, Warden and Fox are not bound as obligors, but from a careful examination of the instrument, we are satisfied it is the bond of Rice, binding upon him individually. The law upon this subject is correctly stated in *Abbey vs. Chase*, 6 *Cush.*, 54, and *Clark's Lessee vs. Courtney*, 5 *Pet.*, 350, and the authorities there cited.

In the first case the instrument purported to be an agreement between the Hadley Falls Company, *by their agent,* of the *first* part, and Abbey, of the *second part.* And the parties throughout are spoken of as the party of the first part and the party of the second part. In the attesting clause, it is stated "the parties hereunto" have set their hands and seals, &c., and it is signed and sealed by Abbey, and by John Chase, "Agent." It was sought to make Chase personally responsible on this agreement, and the Court held his liability must depend on the legal effect of the terms of the contract. "If the agent," say the Court, "employs such terms as legally import an undertaking by the principal only, the contract is the principal's, and he alone is bound by it. But if the terms of the contract legally import a personal undertaking of the agent, and not of the principal, then it is the contract of the agent, and he alone is answerable for a breach of it." In applying this doctrine to the case before them, the Court based their conclusion that the agent was not personally bound, upon the fact that the instrument purported to be a deed *inter partes,* namely, the Hadley Falls Company of the one part, and Abbey, of the other part, and that the acts of the plaintiff in signing and sealing it, and of the defendant in signing his own name, adding thereto the word "agent," and affixing his own seal, was done as the acts of the parties before named as parties to the instrument. But they expressly held that if any words had been inserted expressing or legally importing a personal undertaking on the defendant's part, he would have been personally bound even though the instrument was prepared as a deed *inter partes.* In the latter case, where the language of the instrument was, "I, the said Casey L. Clarke, attorney, as aforesaid," &c., "do hereby relinquish," &c., and the attesting clause was, "In witness whereof, the said Casey L. Clarke, attorney as aforesaid, has hereunto subscribed his hand and seal," &c., and it was signed "Casey L. Clarke, (Seal,") the instrument was held to be the deed of the attorney, and not of the principals. In the bond before us, it is

stated in the obligatory part, "that *we*, Henry H. Rice, Ag't of Alex'r T. Stewart, Francis Warden and George Fox, trading as A. T. Stewart & Co., Alexander Murdoch and Charles W. C. McCoy, *all of Baltimore city*, in the State of Maryland, are held," &c., "to which payment *we* bind *ourselves, our* heirs, executors, and administrators firmly by these presents." Then comes a recital of the intent to issue the writ, and the condition, and the attesting clause is: "In witness whereof, *we* have hereunto set *our* hands and seals, this 30th day of October, 1866," and it is signed "Henry H. Rice, Ag't, (Seal,") and also signed and sealed by Murdoch and McCoy, the sureties. We cannot doubt that the legal import of this language is to bind Rice, personally. The mere description of Rice, as agent for parties who were non-residents of the State, and the expression in the recital that the above "*bounden,*" Stewart, Warden and Fox, were about to sue out the attachment, cannot have the effect of setting aside the legal force and operation of the other controlling terms of the instrument which plainly import personal responsibility on his part. We are clearly of opinion the bond is sufficient.

3d. It has also been objected that the account produced showing the indebtedness of Long, is not such as the law requires, because it only shows the amount claimed, and is not sufficiently explicit and certain in its items and details. An examination of it, however, shows that it is wanting in none of these particulars. It is made out in the mode usually adopted by merchants engaged in extensive business, and is perfectly intelligible.

This disposes of all objections made or suggested, based upon alleged defects apparent on the face of the proceedings. The other reason assigned for quashing the writ goes to matters *dehors*, and relates to the validity of the bill of sale by which the appellee claims title to the property attached. A large mass of testimony has been taken on this subject, but, as we have stated, the judgment below was based exclusively upon the insufficiency of the affidavit. Upon the important

question of the validity of this deed, the parties have never had the benefit of the Court's consideration and judgment. It is true, the question is open to us for decision on this appeal. Such questions may be raised on motion to quash, and heard before the Court, in this summary mode, on evidence produced by the parties, if they elect so to try them. This was decided in *Howard vs. Oppenheimer*, 25 *Md.*, 350, but in that case the better practice of having them submitted to a jury was strongly commended, and looking to all the circumstances of this case, we think the proper course to be pursued, and the one which will best subserve the ends of justice, is to reverse the order appealed from, for the reasons already stated, without expressing any opinion upon the validity of the deed, and send the case back under a *procedendo*, in order that the parties may have again the option to submit the question to a jury, or have it heard and decided by the Court upon the evidence now in the record, and such other testimony as they may chose to introduce under the Court's order and direction.

(Decided 12th March, 1869.)